GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
JOHN PAUL REICHMUTH
LISA MA
Assistant Federal Public Defenders
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:     (510) 637-3500
Facsimile:     (510) 637-3507
Email: John_Reichmuth@fd.org

Counsel for Defendant Williams

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATHAN NALOE WILLIAMS,<br><br>Defendant. | **Case No.:** CR 21–462 HSG<br><br>**MOTION TO SUPPRESS EVIDENCE— EVIDENTIARY HEARING REQUESTED**<br><br>**Court:**          Courtroom 2, 4th Floor<br>**Hearing Date:**  April 20, 2022<br>**Hearing Time:**  10:00 a.m. |

### NOTICE AND MOTION

Nathan Naloe Williams, through counsel, moves the Court for an order suppressing all fruits of the unconstitutional seizures, searches, and interrogations on October 7, 2020, and July 19, 2021, including the evidence allegedly discovered on his person, vehicles, and hotel room, and any statements allegedly made by Mr. Williams. Mr. Williams also moves the Court for an evidentiary hearing on any contested issues of fact. The motion is based on this notice and motion, the following memorandum of points and authorities and accompanying exhibits, the Fourth and Fifth Amendments

to the United States Constitution, all other applicable authority, and such evidence and argument as may be presented at the hearing of this motion.

**RELEVANT FACTUAL ALLEGATIONS**

**I.   September and October 2020 investigations**

On September 28, 2020, Richmond Police Department Detective Guzman allegedly viewed a video posted on social media by a person he believed to be Mr. Williams. Declaration of John Paul Reichmuth ("Reichmuth Decl."), Ex. B at US-00040. The video allegedly appeared to show Mr. Williams with a black Glock pistol and magazine in his lap. *Id*. Detective Guzman allegedly believed the pistol to be a firearm and learned that Mr. Williams had several felony convictions. *Id*.

On October 3, 2020, Detective Guzman allegedly attempted to stop a black Mercedes he believed to be driven by Mr. Williams. Ex. B at US-00039. The vehicle, however, allegedly failed to stop, and Detective Guzman canceled his pursuit. *Id*. at US-00039—40. Later that night, Detective Guzman allegedly viewed another social media video posted from the account he believed belonged to Mr. Williams. *Id*. at US-00040. In this video, Mr. Williams allegedly made statements that Detective Guzman believed referred to fleeing from the police, leaving his vehicle parked somewhere, and throwing a pistol. *Id*. Detective Guzman allegedly subsequently learned that Mr. Williams was staying at the La Quinta hotel near the Oakland airport in Room 221. *Id*.

**II.   October 7, 2020, seizures, searches, and interrogations (Glock 26 discovery)**

On October 7, 2020, at 8:51 p.m., officers arrested Mr. Williams in the parking lot in front of the hotel pursuant to a state arrest warrant. Ex. A at US-00041. During his arrest, officers seized two hotel room key cards. *Id*. at US-00034. Sergeant Lonso, Officer Brian Hoffman, and Officer Ann Shiraishi-Cang stayed in the parking lot with Mr. Williams while Detective Guzman applied for a search warrant for the hotel room and vehicle. *Id.* at US-00033. From their position in the parking lot, Mr. Williams and the officers had a clear view of the hotel room's window. *Id*.

Officers attempted to enter the hotel room with the key cards they found on Mr. Williams, but the lock was out of battery. *Id*. at US-00034. After the hotel's maintenance employees changed the lock's batteries, the officers used one of the seized key cards to enter the hotel room. *Id*. Officers admit that they entered the hotel room before obtaining a warrant and that Mr. Williams could

observe the officers conducting a so-called protective sweep in his hotel room from where he was detained with officers in the parking lot. *Id.* at US-00033. Officers further state that they had informed Mr. Williams they were seeking a warrant for the hotel room prior to any self-incriminatory statement allegedly made by him. *Id.*

On video, Officer Hoffman, still in the parking lot with Mr. Williams, saw the officers inside the hotel room through the window and pointed them out to Mr. Williams, saying: "Hey, man, is that your room right there?" Ex. C at 0:07:03. Mr. Williams turned around and saw the officers in the window, and then stated, "Yeah." *Id*. While the hotel room was being searched, and prior to being informed of his rights to remain silent and to attorney, Mr. Williams allegedly stated, "Well, you got me now. You got the gun, what are we waiting for? I have it for protection." Ex. A at US-00033.

At 10:31 p.m., the state judge issued a search warrant for the hotel room and the vehicle. Ex. B at US-00035—37. In the hotel room's closet, officers allegedly discovered a black Glock 26 pistol and ammunition. Ex. A at US-00014.

### III. July 19, 2021, seizures, searches, and interrogations (Glock 27 discovery)

On July 19, 2021, Mr. Williams was arrested again for the same substantive conduct that he was arrested for on October 7, 2020. Ex. D at US-000176. During his arrest, officers allegedly observed a pistol in plain view on the driver-side floor board of a nearby vehicle and then searched the vehicle, allegedly recovering items including a Glock 27 pistol, cell phones, $12,732 in cash, and clothing. *Id.* at US-00017600177. Subsequently, he allegedly admitted to possessing "both firearms." *Id.*

### IV. Federal criminal proceedings

Mr. Williams is federally charged for being a felon in unlawful possession of the Glock 26 pistol and ammunition allegedly recovered on October 7, 2020, in violation of 18 U.S.C. § 922(g). He now moves to suppress the fruits of the searches and seizures and his alleged statements.

## ARGUMENT

**I. Officers violated the Fourth and Fifth Amendment on October 7, 2020, warranting suppression of the fruits of the violations.**

    **A. The warrantless seizures of the hotel room keys on October 7, 2020, violated the Fourth Amendment.**

Regardless of whether the hotel room keys were discovered lawfully as a search incident to arrest, the constitutionality of the officers' warrantless *seizure* of the hotel room keys to open the hotel room is an inquiry distinct from the question of whether the preceding search was itself constitutional. *See United States v. Barajas*, 517 F. Supp. 3d 1008, 1022–23 (N.D. Cal. 2021) (citing *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). Even if officers were in a lawful position to discover the hotel room keys, their warrantless seizure was unconstitutional unless officers had probable cause to believe the hotel room keys were "contraband or evidence of a crime." *United States v. Washington*, 797 F.2d 1461, 1468 (9th Cir. 1986). The facts available to the officers—that Mr. Williams was under arrest for possessing a firearm they believed had been thrown from a moving car four days earlier—did not warrant a reasonable belief that the hotel room keys were themselves contraband or evidence of a crime. The warrantless seizure of the hotel room keys to use them to open the hotel room was unconstitutional, and the fruits of the seizure should be suppressed.

    **B. Officers' searches on October 7, 2020, violated the Fourth Amendment.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "The Fourth Amendment protection against unreasonable searches and seizures is not limited to one's home, but also extends to such places as hotel or motel rooms." *United States v. Young*, 573 F.3d 711, 715 (9th Cir. 2009) (quoting *United States v. Cormier*, 220 F.3d 1103, 1108–09 (9th Cir. 2000)). A "hotel guest does not lose his reasonable expectation of privacy in his hotel room just because he is detained or arrested by a police officer outside of his … hotel room." *Young*, 573 F.3d at 716.

### 1. The initial entry into the hotel room is not justified by an exception to the warrant requirement.

The officers' physical intrusion into the hotel room is a "search" within the meaning of the Fourth Amendment. *See Fla. v. Jardines*, 569 U.S. 1, 11–12 (2013). In this case, the officers' entered the hotel room prior to the issuance of the search warrant. Ex. A at US-00033; Ex. C at US-00088 at 0:07:00. It was thus a warrantless search.

When a search is conducted without a warrant, the analysis begins "with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). When the government fails to carry its heavy burden, *id*. at 1142 n.1, all fruits of the Fourth Amendment violation must be suppressed. *Id*. at 1143.

In this case, the government cannot carry its burden of establishing that the warrantless search did not violate the Fourth Amendment. Officer Shiraishi-Cang calls this initial entry a "protective sweep." Ex. A at US-00033. But a warrantless protective sweep is only permitted if the searching officer "possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990) (internal citations and quotations omitted). No such specific and articulable facts existed in this case: Mr. Williams was arrested in the parking lot in front of the hotel and officers had no reason to believe that the hotel room contained any individual posing a danger to the officer or others. Officers had possession of both key cards and knew the hotel room lock was not functioning, so they could not have reasonably believed that any individual was in the room. *See* Ex. A at US-00033. Moreover, "officers could have monitored" the hotel room door without going into the room. *United States v. Franco*, 744 F. App'x 360, 363 (9th Cir. 2018). The initial search was not

a protective sweep or justified by any other exception to the warrant requirement, and violated the Fourth Amendment.

### 2. The issuance of the search warrant violated the Fourth Amendment because the affidavit lacked probable cause.

Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause must exist as to two distinct inquiries: (1) "that an offense has been committed" and (2) "that items related to that offense, such as fruits of the crime, will be found on the premises sought to be searched at the time the warrant is issued." *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988). The warrant fails both inquiries.

#### i. The affidavit did not establish probable cause that Mr. Williams possessed a firearm or ammunition.

"Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (citing *United States v. Cervantes*, 703 F.3d 1135, 1139-40 (9th Cir. 2012)). "An affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination." *Id.* Here, the failure to provide sufficient facts in support of the conclusion that the Glock pistol allegedly observed by officers in Mr. Williams' social media video was a real firearm means the application and affidavit did not support a finding of probable cause.

Recently, in *United States v. Powell*, No. 21-CR-00070-RS-1, 2022 WL 62909 (N.D. Cal. Jan. 6, 2022), Chief District Judge Seeborg concluded that probable cause did not support issuance of a warrant where the affidavit provided no facts with which the judge could assess its conclusions that the money orders at issue were counterfeit. *Id*. at *2. Similarly, in this case, the affidavit fails to contain sufficient facts that explain how the affiant determined the pistol was an actual firearm and not an " air soft" pellet or BB firing air-gun. The statement of probable cause alleges that the affiant believed the pistol to be a firearm based the lack of "orange tip indicating it might be a replica

firearm," and the "frame, trigger guard, grip, and the Glock magazine." Ex. B at US-00038. But the affidavit provides no explanation of how the lack of orange tip and the pistol and magazine's physical characteristics tended to show that the pistol was a firearm rather than a "traditional B-B, paint-ball, or pellet-firing air gun[] that expels a projectile through the force of air pressure," which is not required to contain an orange tip. 15 U.S.C. § 5001(c); *see also* Cal. Penal Code § 16700(b). Nor do the frame, trigger guard, grip and Glock magazine distinguish the item in the video from an air soft pellet firing air gun. Air-soft BB firearms are common, inexpensive, and faithful renditions of true firearms, including the model at issue in this case, the Glock 26. *See* Ex. E.

Without sufficient facts supporting the conclusion that pistol was a true firearm, and not airsoft, the state judge could not "draw his or her own reasonable inferences and conclusions," which is the "central basis of the probable cause determination." *Underwood*, 725 F.3d at 1081. As the affidavit did not establish probable cause as to firearm possession, no probable cause existed to issue the warrant to search for evidence thereof.

    **ii. The affidavit did not establish probable cause that evidence of any offense would be found in the hotel room.**

The warrant affidavit also failed to establish a fair probability that a firearm or evidence of illegal possession of a firearm would be found in the hotel room. The affidavit alleges that Mr. Williams had "posted a live feed [video] of himself *inside a vehicle* with a firearm." Ex. B at US-00038 (emphasis added). It alleges that Mr. Williams fled a potential police encounter *in his vehicle* because he "was possibly armed with the firearm." *Id*. at US-00040. It alleges that he admitted to discarding the firearm out of his *vehicle* several days before the search warrant was issued. *Id*. These facts might support an inference that the firearm would be found in Mr. Williams' *vehicle,* had it not allegedly been thrown out four days prior, but do not support the conclusion that the firearm would be found in Mr. Williams' *hotel room*. *See United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (though facts in search warrant affidavit supported search of defendant's *vehicle*, "they did not establish a fair probability that evidence of drug trafficking would be found at his *residence*") (emphasis added).

The affidavit attempts to establish a nexus between the offense and the hotel room with the conclusory allegation that "I believe persons in possession of firearms will also possess at their place of residence additional firearms, ammunition and ammunition containers such as magazines, pouches, and boxes." Ex. B at US-00041. But, again, "[c]onclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." *Underwood*, 725 F.3d at 1081. In *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990), the Ninth Circuit found that a search warrant affidavit failed to establish that child pornography would be found in a suspect's house based on "foundationless" expert testimony in the affidavit that child pornography collectors kept child pornography and related evidence in their houses. *Id*. at 1344–45. Similarly, in *Underwood*, the Ninth Circuit concluded that a search warrant affidavit failed to establish that evidence of drug trafficking would be found in a suspect's home based on "foundationless" "expert opinion on drug traffickers keeping such evidence at their homes." 725 F.3d at 1084.

Here, too, the affidavit relies only on foundationless expert opinion that possessors of illegal firearms keep evidence of "additional firearms" and "ammunition" in their "place of residence." Ex. B at US-00041. But Mr. Williams' status as a felon who possessed a firearm in his *vehicle* days before does not give rise to a fair probability that any firearm would be found in his *hotel room*. *See Brown*, 828 F.3d at 383 **(**a suspect's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home."). The search warrant affidavit failed to establish probable cause to search the hotel room. Evidence in the hotel room was thus obtained without a warrant based on probable cause and should be suppressed.

### C.    Officers violated Mr. Williams' Fifth Amendment rights on October 7, 2020.

The Fifth Amendment requires police officers to inform persons of certain constitutional rights before conducting custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436 (1966). Those rights include the right to remain silent and the right to have an attorney present for custodial interrogation. *Id*. at 444. Officers must provide *Miranda* warnings to all persons before conducting custodial interrogations. *Id*. Custodial interrogations occur whenever officers ask interrogatory questions of a person in police custody. *Id*.

Interrogatory questions involve "any words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Pennsylvania v. Muniz*, 496 U.S. 582, 600–01 (1990). This analysis "focuses upon the perceptions of the suspect, rather than the intent of the police." *Id*. at 601.

Mr. Williams' alleged pre-*Miranda* statements were the product of interrogation. While under arrest, Mr. Williams had a view of the hotel room being searched, and Officer Hoffman asked him, "Hey, man, is that your room right there?" Ex C. at 0:07:03. Given that Mr. Williams' room was being searched at the time and he had just been arrested for illegal firearm possession, this question was reasonably likely to elicit an incriminating response. *See United States v. Allen*, 497 F. Supp. 3d 811, 825 (N.D. Cal. 2020) (suppressing defendant's response to officer's question how he wound up in Pinole when defendant had been arrested in a car reported stolen from Washington and for being a convicted felon in possession of a rifle). The alleged statement should be suppressed.

## II. The evidence discovered on July 19, 2021, should be suppressed.

### A. The evidence and statements discovered on July 19, 2021, should be suppressed as illegally obtained fruits of the October 7, 2020, constitutional violations.

The exclusionary rule generally applied in Fourth Amendment cases requires courts to suppress any evidence obtained as a "direct result of an illegal search or seizure" as well as "evidence later discovered and found to be derivative of an illegality," the so-called "fruit of the poisonous tree." *United States v. Ngumezi*, 980 F.3d 1285, 1290 (9th Cir. 2020) (internal citations and quotations omitted). "The government bears the burden of proving that the taint of the prior illegality has been attenuated enough" to admit the derivative evidence, which includes statements. *United States v. Bocharnikov*, 966 F.3d 1000, 1003 (9th Cir. 2020). The evidence discovered by officers on July 19, 2021—including the Glock 27 pistol and Mr. Williams' alleged statements—were derivative of the unconstitutional searches, seizures, and interrogation on October 7, 2020, and should be suppressed as fruits of the poisonous tree.

### B. Alternatively, the officers independently violated the Fourth Amendment on July 19, 2021, warranting suppression.

Even if the government's conduct on October 7, 2020, was lawful, the officers independently violated the Fourth Amendment on July 18, 2021, when they searched the vehicle and seized items

1  therein—including the Glock 27 pistol, ammunition, cash, and cell phones—without a warrant.
2  Searches conducted without a warrant "are per se unreasonable under the Fourth Amendment—
3  subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*,
4  389 U.S. 347, 357 (1967). The government bears the burden of proving that a warrantless search or
5  seizure falls within an exception to the warrant requirement. *United States v. Hawkins*, 249 F.3d 867,
6  872 (9th Cir. 2001). Reasonableness, which is the "touchstone" of the Fourth Amendment, is
7  "measured in objective terms by examining the totality of the circumstances," which involves a fact-
8  specific inquiry. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Here, the government cannot meet its
9  burden to justify the warrantless searches and seizures on October 7, 2020.

10  The only exception to the warrant requirement cited by the officers in their report of the July
11  18, 2021, incident is the plain view exception. *See* Ex. D at US-000176. But an officer "must have a
12  lawful right of access to any contraband he discovers in plain view in order to seize it without a
13  warrant." *Collins v. Virginia*, 138 S. Ct. 1663, 1667 (2018) (internal citations omitted). In this case,
14  the officers did not have a lawful right to access the vehicle so they could not have seized the items
15  within the vehicle without a warrant. *See United States v. Howard*, No. 20-20147-CR, 2021 WL
16  3883919, at *7 (S.D. Fla. Aug. 31, 2021) (plain view exception did not justify seizure of gun when
17  police did not have right to access curtilage to effect a seizure and search). In addition, the officers
18  lacked probable cause to seize the items in the vehicle because "the incriminating character of those
19  items was not 'immediately apparent at the time of seizure." *Barajas*, 517 F. Supp. 3d at 1012. The
20  warrantless search of the vehicle and seizure of the items therein were unconstitutional.

21  **III.   An evidentiary hearing is warranted should the government contest issues of fact.**

22  Should the Court disagree that suppression is warranted on the record before it, an evidentiary
23  hearing should be held on the issues of fact contested by the parties. *See United States v. Mejia*, 69
24  F.3d 309, 318 (9th Cir. 1995) (requiring "the district court to conduct an evidentiary hearing when the
25  moving papers filed in connection with a pre-trial suppression motion show that there are contested
26  issues of fact relating to the lawfulness of a search."); *see also United States v. Packwood*, 848 F.2d
27  1009, 1010 (9th Cir. 1988) ("where sworn statements and exhibits present directly contradictory
28  accounts of events, a hearing is required.") (internal quotation marks and citations omitted).

**CONCLUSION**

For the reasons stated above, Mr. Williams requests that the Court suppress all fruits of the violations of his constitutional rights, including evidence of firearms and ammunition and evidence of his alleged statements. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *Murray v. United States*, 487 U.S. 533 (1988).

Dated: March 2, 2021

Respectfully submitted,

GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California

      /S
JOHN PAUL REICHMUTH
Assistant Federal Public Defender