1   STEPHANIE M.  HINDS (CABN 154284)
    United States Attorney
2
    THOMAS S. COLTHURST (CABN 99493)
3   Chief, Criminal Division

4   MOLLY K. PRIEDEMAN (CABN 302096)
    Assistant United States Attorney
5
            1301 Clay Street, Suite 340S
6           Oakland, California 94612
            Telephone: (510) 637-3680
7           FAX: (510) 637-3724
            molly.priedeman@usdoj.gov
8
9   Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   OAKLAND DIVISION

13   UNITED STATES OF AMERICA,              )   NO. 21-CR-462 HSG
                                            )
14                      Plaintiff,          )   UNITED STATES' OPPOSITION TO
                                            )   DEFENDANT'S MOTION TO COMPEL
15   v.                                     )   DISCOVERY
                                            )
16   NATHAN NALOE WILLIAMS,                 )
                                            )   Court: Courtroom 2, 4th Floor
17                      Defendant.          )   Hearing Date: April 20, 2022
                                            )   Hearing Time: 10:00 am
18   _____

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

II.     FACTUAL BACKGROUND.......................................................................................................2

        A.      Williams Displays Firearm on Instagram and Boasts About Tossing Firearm
                During High Speed Chase.................................................................................................2

III.    PROCEDURAL POSTURE .........................................................................................................3

IV.     ARGUMENT .................................................................................................................................3

V.      CONCLUSION..............................................................................................................................6

1

**TABLE OF AUTHORITIES**

2

Cases

3

*United States v. Armstrong*, 517 U.S. 456 (1996) ................................................................. 3, 6

4

*United States v. Lopez*, 415 F.Supp.3d 422 (S.D.N.Y. 2019) ............................................. 4, 5, 6

5

6

*United States v. Mumphrey*, 193 F.Supp.3d 1040 (N.D. Cal. 2016) ................................... 4, 5, 6

7

*United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018) ...................................................... 1, 2, 3, 4

8

*United States v. Washington*, 869 F.3d 193 (3rd Cir. 2017) ............................................... 4, 5, 6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Nathan Naloe Williams moves the Court for an order compelling discovery relevant to pursue a claim of race-based selective enforcement.  Despite the serious nature of this claim, the only evidence Williams has presented in support of his argument is a declaration by his defense counsel positing that the undercover account used to monitor Williams appeared to use a photograph of a black woman, and appeared to also be following other black users.  Even if the race of the other social media users referenced by Williams was obvious – which it is not – Williams has shown no evidence that a protected class was targeted or singled out for an enforcement action.  As result, Williams cannot meet his burden to compel discovery under any standard.  The Court should deny Williams's speculative claim and exercise its gatekeeping function to foreclose this fishing expedition.

"To succeed on [his] selective enforcement claim, [Williams] must show that the enforcement had a discriminatory effect *and* was motivated by a discriminatory purpose."  *United States v. Sellers*, 906 F.3d 848, 850 (9th Cir. 2018).  To compel discovery for a selective enforcement claim, Williams must, at a minimum, proffer *some* statistically significant evidence of discriminatory effect and cannot rely on speculation.

Williams cannot meet this standard.  *First*, Williams's argument is based on the premise that the Richmond Police Department (RPD) "was monitoring approximately seven other social media accounts that were apparently used by black individuals."  Def. Mot. at 2.  In support of that premise, Williams offers a declaration from his defense counsel that the individuals visible only in thumbnail size pictures in the short video of the undercover account "appear to be black."  Reichmuth Decl. ¶ 3.  But the race of these individuals is far from obvious.  *Second*, even if the race of the users was obvious, the fact that an undercover account follows a handful of other black users, without more, is insufficient to suggest that a protected class was disproportionately targeted by RPD officers.

The Court should reject any attempt by Williams to argue that he needs additional information from the government to meet his initial discovery burden.  That is not the standard.  Williams must show evidence of discriminatory effect to justify discovery relevant to a claim of selective enforcement.  He has not and cannot do that, and his motion should be denied.

1

2      **II.      FACTUAL BACKGROUND**

3      **A.  Williams Displays Firearm on Instagram and Boasts About Tossing Firearm During
           High Speed Chase**

4            On or about September 28, 2020, Williams posted a live video to his Instagram[1] account.  In the

5      live video,[2] Williams can be seen with a Glock pistol on his lap.  RPD officers used an undercover

6      Instagram account to review the video.  Guzman Decl. ¶ 5.  The government produced a video taken of

7      the phone used to monitor Williams's Instagram live video in discovery.  Def. Ex. B, US-86.  At the end

8      of Williams's live video, several other users' Instagram "stories"[3] are visible at the top of the

9      undercover's Instagram account (@_fastlanekev; @narfsidemelly; @bundleofbec; @nohosayjose;

10     @buggahh; @dmac3400).  *Id.*  One "post" is also visible from username "@richcityswagg100."  The

11     fact that these "stories" are visible on the undercover's account suggests that the undercover account

12     was also following these users.[4]  The video of the undercover's account does not show all of the

13     "stories" present on the undercover's Instagram feed.[5]   Nor does the video reveal all of the users

14     followed by the undercover account who had not posted "stories" at the time the video of the

15     undercover's account was taken.

16           On or about October 3, 2020, RPD officers on patrol in Richmond, California attempted to

17     execute a traffic stop on Williams's vehicle for several California Vehicle Code violations.  Guzman

18

19     ─────────────────────

20          [1] Instagram is a free, online photo-sharing application and social network platform.  Instagram
       users can post photos or videos to their account.  Users can view the photos and videos they have posted
       on their profile, as well as the list of people the user is following and who is following the user.  *See*

21     *Your Profile, Instagram Help Center*, https://help.instagram.com/110121795815331/?helppref=hc_fnav
       (last visited March 29, 2022).

22          [2] Instagram users can start a live broadcast to connect with followers in real time, and users can
       invite up to three guests to "join" their live room.  *Live, Instagram Help Center*,

23     https://help.instagram.com/272122157758915/?helppref=hc_fnav (last visited March 29, 2022).

24          [3] Users can also post videos or photos on their Instagram "story."  *Stories, Instagram Help
       Center*, https://help.instagram.com/1660923094227526/?helppref=hc_fnav (last visited March 29, 2022).
       Photos and videos shared to an Instagram story typically disappear from a user's Feed after 24 hours.

25     *Id.*

26          [4] When a user posts an Instagram story it appears in a row at the top of the user's followers'
       Feeds, and they can tap it to see the user's story.  *Stories, Instagram Help Center*,

27     https://help.instagram.com/1660923094227526/?helppref=hc_fnav (last visited March 29, 2022).

28          [5] Another user's story is cut off, and therefore the full username and picture are not visible.

Decl. ¶ 6.  Instead of yielding, Williams fled from the officers, ultimately running a red light and reaching a speed of approximately 120 mph.  *Id.*  The officers were forced to terminate the pursuit of Williams after Williams entered the freeway due to unsafe speeds.  *Id.*

On or about October 3, 2020, after the pursuit described above, RPD officers again monitored Williams's Instagram account.  Guzman Decl. ¶ 7.  The same day as the pursuit, Williams posted another Instagram video where he made references to throwing his Glock pistol out the window during the pursuit with officers, and that he planned to return to the freeway at two or three in the morning to retrieve the firearm.  *Id.*

Law enforcement obtained an arrest warrant based on the above-described conduct, and Williams was arrested on October 7, 2020.  Guzman Decl. ¶ 8.  Officers also obtained a search warrant for his hotel room and uncovered a firearm.  *Id.*

### III.    PROCEDURAL POSTURE

On December 2, 2021, the federal government filed an Information charging Williams with a violation of 18 U.S.C. § 922(g) – Felon in Possession of a Firearm.  Dkt. 28.  On March 2, 2022, Williams filed a motion to suppress and a motion to compel discovery.  *See* Dkt. 48, Dkt. 50.

### IV.    ARGUMENT

Williams moves for discovery to pursue a claim for selective enforcement based on the RPD's alleged monitoring of the social media accounts of black users.  "To succeed on [his] selective enforcement claim, [Williams] must show that the enforcement had a discriminatory effect *and* was motivated by a discriminatory purpose."  *United States v. Sellers*, 906 F.3d 848, 850 (9th Cir. 2018).

"[S]elective prosecution and selective enforcement claims are undoubtedly related . . . ."  *Sellers*, 906 F.3d at 852.  To compel discovery for a selective prosecution claim, a defendant must meet a "rigorous standard," whereby a defendant must show that "the Government has failed to prosecute others who are similarly situated to the defendant" as evidence of "discriminatory effect." *United States v. Armstrong*, 517 U.S. 456, 469 (1996).

In *Sellers*, the Ninth Circuit held that *Armstrong's* "rigorous discovery standard for selective prosecution cases does not apply strictly to discovery requests in selective enforcement claims" in stash

1    house reverse-sting cases.  *Sellers*, 906 F.3d at 855.  In doing so, the Court held that "a defendant need

2    not proffer evidence that similarly-situated individuals of a different race were not investigated or

3    arrested to receive discovery on his selective enforcement claim in a stash house reverse-sting operation

4    case.  While defendant must have *something* more than mere speculation to be entitled to discovery,

5    what that *something* looks like will vary from case to case."  *Id.*  Courts interpreting more relaxed

6    discovery standards in the context of selective enforcement, have held that a defendant must proffer

7    *some* statistically significant evidence of discriminatory effect and cannot rely on "mere speculation."

8    *See United States v. Mumphrey*, 193 F.Supp.3d 1040, 1059 (N.D. Cal. 2016); *United States v.*

9    *Washington*, 869 F.3d 193, 221 (3rd Cir. 2017); *United States v. Lopez*, 415 F.Supp.3d 422, 427

10   (S.D.N.Y. 2019).

11           As an initial point, it is unclear whether *Sellers* applies with full force in this context.  Law

12   enforcement's use of social media as an information gathering tool is a far cry from reverse-sting

13   operations "where no independent crime is committed [and] the existence of the 'crime' is entirely

14   dependent on law enforcement approaching targets."  *Sellers*, 906 F.3d at 853.  Indeed, the officers'

15   monitoring of social media in this case is the virtual equivalent of conducting surveillance on a street

16   corner, rather than a targeted enforcement action.  The *enforcement* in this case stems not from the

17   decision to monitor Williams, but rather Williams's decision to openly reveal and boast about his

18   firearm online despite his prior felony conviction, and his decision to flee from officers during an

19   attempted traffic stop and initiation of a high-speed chase.  RPD's monitoring of Williams's social

20   media account was not the sole event before his arrest—rather, he first led the RPD on a high-speed car

21   chase.

22           The Court need not decide whether *Sellers* applies in this context, however, because, even

23   assuming it does, Williams has failed to meet even the "less rigorous" standard articulated in *Sellers*.  In

24   interpreting the "less rigorous" discovery standard for selective enforcement claims, courts have

25   determined that a defendant must make a statistically significant showing that he has been targeted by

26   law enforcement in comparison with other groups to warrant further inquiry and discovery.  *See*

27   *Mumphrey*, 193 F.Supp.3d at 1059 ("defendant can simply rely on statistics showing . . . that a

28

1   significant majority of persons targeted by law enforcement is made up by members of protected class");

2   *Washington*, 869 F.3d at 221  (to meet standard for discovery in selective enforcement cases defendant's

3   proffer "must contain reliable statistical data, or its equivalent  . . ."); *Lopez*, 415 F.Supp.3d at 427

4   (S.D.N.Y. 2019) ("the appropriate standard is that where a defendant who is a member of a protected

5   group can show that the group has been singled out for reverse sting operations to a statistically

6   significant extent in comparisons with other groups").

7        In *Lopez*, for example, the Court found that the defendant was entitled to "limited" discovery for

8   his selective enforcement claim based on a "combination of raw data and statistical analysis."  *Lopez*,

9   415 F.Supp.3d at 427.  Specifically, the Court pointed to defendant's evidence that in stark contrast to

10  the racial makeup of the surrounding counties, "not a single one of the 179 individuals targeted in DEA

11  reverse sting operations in SDNY in the past ten years was white, and that all but two were African-

12  American or Hispanic."  *Id.*  The Court also pointed out that the defendant had presented "compelling

13  expert analysis demonstrating that these numbers are statistically significant" based on a "rigorous

14  analysis" conducted by a Harvard law and economics professor that concluded that it was "highly

15  unlikely, to the point of statistical significance, that the racially disparate impact of the DEA's reverse

16  sting operations is simply random."  *Id.*  Similarly, in *Mumphrey*, the Court found that the defendants

17  were entitled to discovery on their selective enforcement claim where the defendants "submitted

18  undisputable evidence" that all 37 defendants charged on the basis of drug-trafficking sweeps were

19  black and that "these numbers [were] highly significant as a statistical matter."  *Mumphrey*, 193

20  F.Supp.3d at 1060.

21       Williams falls far, far short of this standard.  In support of his motion, Williams argues that

22  because the RPD undercover Instagram account used in this case was following several Instagram users

23  that appear to be black, RPD has "targeted black individuals, like him, to monitor on social media for

24  crimes."  Def. Mot. at 3.  In support of this conclusion, defense counsel has submitted a declaration that

25  the users visible in the undercover video "appear to be black."  Reichmuth Decl. ¶ 3.  But the race of the

26  users in the thumbnail photographs visible on the undercover's account are far from obvious.  In fact,

27  the photograph for user "@narfsidenelly" cited by defense counsel appears to show only dollar bill

28

1   symbols.  Defense counsel provides no explanation for why that user "appears to be black."

2          But even assuming the accounts cited by defense counsel belong to black users, Williams cannot

3   show that black individuals have been "singled out" or represent a "significant majority of persons

4   targeted by law enforcement."  *Lopez*, 415 F.Supp.3d at 427; *Mumphrey*, 193 F.Supp.3d at 1059.  In

5   fact, Williams has failed to show *any* evidence of discriminatory effect.  He has provided *no* data

6   suggesting that a protected class was disproportionately targeted by RPD, let alone statistically

7   significant data.  Williams attempts to cobble together an inference of discriminatory effect by relying

8   on the fact that the undercover Instagram account used to monitor him also appeared to be following

9   other black users.  This leap of logic is purely speculative.  Even assuming the race of all the users

10  visible on the undercover's account were obvious (which it is not), the short portion of the video of the

11  undercover Instagram video referenced by Williams shows only the Instagram users followed by the

12  undercover account who had posted Instagram stories visible on the undercover account *at the time of*

13  *the video*. The video does not reveal the total number of individuals followed by the undercover account

14  in question, the total number of individuals followed by all RPD undercover accounts, the racial

15  breakdown of the individuals monitored by RPD.

16         The Court should reject any argument by Williams that he needs this additional information from

17  the government even to meet his burden under *Sellers*.  That is not the test and Williams should be

18  prohibited from trying to bootstrap his way around his burden.  There is good reason to require Williams

19  to show evidence of discriminatory effect *before* compelling the government to produce discovery.  If

20  discovery is ordered in this case, the Government would be required to collect information to refute the

21  defendant's claim, "impos[ing] many of the costs present when the Government must respond to a prima

22  facie case of selective" enforcement which will in turn "divert prosecutors' resources."  *Armstrong*, 517

23  U.S. at 468; *see also Washington*, 869 F.3d at 220 ("[C]ourts contemplating motions for discovery on

24  selective enforcement claims must still be guided by the spirit of *Armstrong*."). The Court's gatekeeping

25  role is critical in this context to prevent potential abuse and weed out frivolous claims.

26  //

27  //

28

1

## V.       CONCLUSION

2        For the reasons stated above, the Court should deny Williams's motion to compel discovery.

3

4   DATED: March 30, 2022                          Respectfully submitted,

5

6                                                  STEPHANIE M. HINDS
                                                   United States Attorney
7
                                                       /s/ *Molly K. Priedeman*
8                                                  MOLLY K. PRIEDEMAN
                                                   Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2022, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of California, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Molly K. Priedeman*
MOLLY K. PRIEDEMAN
Assistant United States Attorney

US OPPOSITION
21-CR-462 HSG                                                8